UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
WCHCC (BERMUDA) LIMITED,           :
               Plaintiff,         :
                           :         **MEMORANDUM DECISION**
v.                           :
                           :         12 CV 94 (VB)
GRANITE STATE INSURANCE     :
COMPANY,                     :
               Defendant.     :
---------------------------------------------------------------x
Briccetti, J.:

      Plaintiff WCHCC (Bermuda) Limited, the insurer of Westchester County Health Care

Corporation, which operates Westchester Medical Center ("WMC"), brings this action against

defendant Granite State Insurance Company, which insured a registered nurse (the "Nurse")

employed at WMC.  In sum, plaintiff argues its insurance policy covering the Nurse is excess to

defendant's policy, and thus defendant must reimburse plaintiff for $1 million plaintiff paid to

settle a state court medical malpractice claim against the Nurse, plus plaintiff's cost to defend the

Nurse in that action.

      Plaintiff now moves for summary judgment.  (Doc. #23).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      The parties have submitted briefs, statements of facts, and declarations with supporting

exhibits, which reflect the following factual background.

      Plaintiff insures the hospital corporation that operates WMC.  In pertinent part, plaintiff's

professional liability and commercial general liability policy states:

V.   Other Insurance:

    a.  The insurance provided by this policy is excess of any valid and collectible insurance or self insurance coverage afforded or provided to any individual medical practitioner, including but not limited to a nurse or physician, whether such other insurance or self insurance is stated to be primary, contingent, excess of other insurance or otherwise, and this policy will not serve as the primary insurance where such other coverage is available.  It is the intent that this policy apply in such circumstances only to loss that is more than the total limit of all deductibles, limits of liability, self insurance or other valid and collectible insurance, including defense expenses.  The foregoing does not apply to any insurance policy or self insurance arrangement [sic] specifically written to be excess over the limits of liability of this policy.

    b.  Notwithstanding Paragraph A above, with respect to claims against an Insured pursuant to . . . this policy, when both this insurance and other insurance apply to the loss as primary insurance, this insurance shall be deemed primary, and such other insurance shall apply excess of the limits provided hereunder.

        . . . .

    d.  Except as provided in Paragraph A above, the insurance afforded by this policy is primary insurance.  When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

    e.  When both this insurance and other insurance or self insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid . . .

The Nurse independently obtained a $1 million professional liability insurance policy from defendant.  In pertinent part, defendant's policy states:

    J.  Other Insurance

    If there is other insurance, which applies to the loss covered under this Policy, the other insurance must pay first.  This Policy applies to the amount of loss, which is more than:

      1.  The Limits of Insurance of the other Insurance; and

   2.   The total of all deductibles and self-insured amounts under all such
        other insurance.

After an incident during a procedure at WMC in January 2006, a patient's spouse

commenced a medical malpractice lawsuit in New York Supreme Court against WMC, several

healthcare professionals, and the Nurse.  A single law firm represented all defendants in that

action.

        At some point, in either June 2007 or January 2009, the Nurse notified her insurance

company, the defendant here, of the state suit.  In January 2011, the state case settled; the

patient's spouse agreed to discontinue the lawsuit in exchange for a payment on behalf of the

Nurse of $2.25 million.[1]  The presiding Justice of the Supreme Court approved the settlement on

May 10, 2011.

        Thereafter, plaintiff sought reimbursement from defendant for defendant's $1 million

policy limit plus the cost of defending the Nurse.  After defendant refused the request, plaintiff

commenced this federal diversity action.

**DISCUSSION**

I.      <u>Standard of Review</u>

        The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[1] The parties disagree about the strength of the patient's spouse's case, the weight of evidence
against the Nurse, and the relative fault of other state-case defendants.  As discussed below,
however, the Court finds these factual disputes immaterial for purposes of this motion.

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits evidence which is "merely colorable," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party.  Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011).  If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is

improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Priority of Insurance Coverage

      A.     Primer on Insurance

Of the many forms of insurance coverage available, "primary" and "excess" insurance are relevant to this case.  "'[P]rimary' insurance refers to the first layer of insurance coverage that attaches immediately upon the occurrence of a policy-defined liability or loss." Ali v. Fed. Ins. Co, __ F.3d __, 2013 U.S. App. LEXIS 11157, at *17 (2d Cir. June 4, 2013).  "'Excess liability policies, by contrast, . . . provide an additional layer of coverage for losses that exceed the limits of a primary liability policy.  Coverage under an excess policy thus is triggered when the liability limits of the underlying primary insurance policy have been exhausted.'" Id. (quoting Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008)). "'Excess insurance may also be designed to operate above another excess policy,' with coverage under the higher-layer excess policies triggered once the lower-layer excess policies are exhausted." Id. at *18 (quoting Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d at 329 n.1).  "'Because coverage [under an excess policy] is only triggered after the primary insurance limit has been exhausted, excess insurance is generally available at a lesser cost than the primary policy since the risk of loss is less than for the primary insurer.'" Id. (quoting Gabarick v. Laurin Mar. (Am.) Inc., 649 F.3d 417, 422 (5th Cir. 2011)).

When multiple policies—whether primary, excess, or otherwise—could conceivably cover the same loss, "specialized policy provisions and doctrines . . . determine the amount of liability that will be allocated to each policy.  Most policies contain 'other insurance' provisions that address the priority of obligations among multiple concurrent insurers of the same interest."

Robert D. Goodman & Steve Vaccaro, New Appleman New York Insurance Law § 15.04 (2d ed. 2012).  Such "other insurance" provisions are the focus of the dispute in this case.

      B.    Claim at Issue

At summary judgment, the Court applies New York's specialized body of "other insurance" law to determine the priority of the insurance policies at issue.  See Reliance Nat'l Ins. Co. v. Royal Indem. Co., 2001 U.S. Dist. LEXIS 12901, at *58-59 (S.D.N.Y. Aug. 24, 2001) (citations omitted); see also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 318 (1994) (noting New York law applies to insurance contracts when "the parties understood [New York] was to be the principal location of the insured risk").

"[T]o determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue."  BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 716  (2007).  The Court's determination "'turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance.'" Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 148 (1st Dep't 2008) (quoting State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 374 (1985)).  "The hallmark of New York's approach to 'other insurance' issues is the 'recogni[tion of] the right of each insurer to rely upon the terms of its own contract with its insured.'  Thus, in seeking to determine the effect of the . . . excess 'other insurance' clause, [the Court's] first resort is to the language of that clause."  Sport Rock Int'l v. Am. Cas. Co. of Reading, 878 N.Y.S.2d 339, 346 (1st Dep't 2009) (quoting State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d at 373); see also Ali v. Fed. Ins. Co, 2013 U.S. App. LEXIS 11157, at *16 (citing Fieldston Prop. Owners Ass'n, Inc. v.

Hermitage Ins. Co., 16 N.Y.3d 257, 264 (2011)) ("As in other contract disputes, insurance policies are interpreted according to their plain terms.").

"The general rule under New York law is that . . . where each of the policies covering [a] risk 'generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance.'" United States Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) (quoting Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d 651, 655 (1980)). "By contrast, where one policy 'expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies,' other policies that cover the same risk, including those with merely 'general' excess insurance clauses—that is, excess insurance clauses that do not purport to be excess in relation to other excess policies—must be exhausted before the former policy becomes obliged to pay." Phila. Indem. Ins. Co. v. Emp'rs Ins. Co., 318 F. Supp. 2d 170, 172 (S.D.N.Y. 2004) (quoting State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d at 374).

In Lumbermens, the leading case in this area, the New York Court of Appeals construed three policies to create tiers of insurance as follows:  first, a policy stating generally it was excess to other sources of insurance; second, a policy explicitly stating it was excess to the first policy but that it would not contribute with other excess policies, thereby acknowledging another policy could be excess; and, third, a policy explicitly stating it was excess of all other coverage, including other excess coverage, and charging a lower premium that reflected it was excess. Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d at 655-56.

Here, defendant's policy clearly fits the first Lumbermens category.  The policy does not state whether it is primary or excess, but it does include an "other insurance" provision stating

"the other insurance must pay first."  That clause does not describe any other insurance—either by carrier, type of policy, or position in the insurance tower—or specifically state another excess policy must pay first.

Plaintiff's policy fits the second Lumbermens category.  The policy states it is primary insurance, but also that it is excess to other valid insurance provided to, among others, an individual nurse, whether the nurse's policy is listed as primary or excess.  Plaintiff's policy explicitly states it is not primary when such other individual insurance is available, and that it is intended to apply only when the loss is greater than the deductibles and limits on other valid insurance.  See Davis v. De Frank, 33 A.D.2d 236, 238-41 (4th Dep't 1970) (honoring clause noting policy does not apply when there is other insurance, "either primary or excess").  Compare Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d at 656 (finding policy excess when it stated it was excess to other "excess" insurance) with United States Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 886 (finding policies on same tier when neither stated it was excess to other "excess" policies).

Defendant notes plaintiff's policy includes a provision contemplating equal contributions when another policy applies "on the same basis, whether primary, excess or contingent," and thus envisions another policy could lie alongside or above plaintiff's.  True enough, but that provision, in plaintiff's policy, does not elevate defendant's policy from primary to excess.  See, e.g., Sport Rock Int'l v. Am. Cas. Co. of Reading, 878 N.Y.S.2d at 345 ("[A]n excess 'other insurance' clause will not render a policy sold as primary insurance excess to a true excess or umbrella policy sold to provide a higher tier of coverage.").  And the provision in plaintiff's policy does not explain when other insurance "must pay first" under defendant's policy.  As a

result, plaintiff's and defendant's policies do not apply "on the same basis" and therefore the parties need not contribute equally.[2]

Defendant also argues the large disparity in premiums on the respective policies—a $17 million advance premium on $5 million of coverage for each incident under plaintiff's policy, compared to an $89 annual premium on $1 million of coverage for each incident under defendant's policy—reinforces that plaintiff's policy is excess to defendant's policy.  Here, however, the premiums are not remotely comparable because plaintiff's policy covers professional liability and commercial general liability for Westchester County Health Care Corporation, which operates WMC, as well as WMC's employees (unless they have other insurance) and others, whereas defendant's policy merely covers the professional liability of a single nurse.  Therefore, the "premium disparity reflect[s] not different layers of coverage but rather significant differences in the number and types of risks covered."  United States Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 885.

C.    Equitable Considerations

Separate from parsing of the language of the insurance policies at issue, defendant alleges plaintiff "orchestrated" the settlement of the malpractice action to the Nurse's detriment so plaintiff could seek recovery from defendant.  In sum, defendant contends summary judgment for plaintiff is improper, "by virtue of equitable principles," because plaintiff retained a single law firm to represent all defendants in the underlying malpractice suit, the settlement ascribed fault only to the Nurse, and the Nurse never gave defendant the required consent to settle.

---

[2] The Court need not address plaintiff's argument that, even if the sharing provision were triggered because the respective policies applied on the same basis, that provision would obligate defendant to contribute $1 million (its policy limit) plus the cost of defending the Nurse because the state case settled for $2.25 million.

It is undisputed that defendant was on notice of the state case against the Nurse at least as of January 12, 2009, approximately two years before the case ultimately settled.  Defendant provides no evidence, either while the malpractice case was progressing or when it settled, showing defendant objected to the single firm representing all defendants, to the portion of fault attributed to the Nurse, or to the purported lack of consent from the Nurse.  In fact, by letter dated January 20, 2011, defendant's counsel "demanded that [WMC] continue to defend, and, if necessary, indemnify" the Nurse.

Accordingly, because defendant refused to participate in the settlement negotiation and failed to contest the reasonableness of the settlement, defendant has no basis now to challenge the propriety of the resolution of the malpractice action.  See, e.g., City of N.Y. v. Zurich-Am. Ins. Group, 27 A.D.3d 609, 611 (2d Dep't 2006); Utica Mut. Ins. Co. v Gov't Empls. Ins. Co., 2011 N.Y. Misc. LEXIS 4418, at *6 (Sup. Ct. Nassau County Sept. 13, 2011), aff'd, 98 A.D.3d 502 (2d Dep't 2012); see also Feliberty v. Damon, 72 N.Y.2d 112, 120 (1988) (insurer not vicariously liable if attorney violates duty to represent insured (not insurer), because insurer cannot control case and insured can bring separate claim against attorney).[3]

---

[3] Defendant also argues plaintiff is estopped from attempting "to avoid its primary coverage obligation at this juncture."  This argument is inapposite, because the Nurse was not harmed by plaintiff's defense of her in the malpractice action, and plaintiff knew during that case that the Nurse was covered by defendant's policy.  See, e.g., Albert J. Schiff Assoc., Inc. v. Flack, 51 N.Y.2d 692, 699 (1980); Merchants Mut. Ins. Grp. v. Travelers Ins. Co., 24 A.D.3d 1179, 1181 (4th Dep't 2005).

**CONCLUSION**

Plaintiff's motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion.  (Doc. #23).

Plaintiff is directed to submit a proposed judgment, on notice to defendant, by June 24,

2013.  See SDNY Loc. Civ. R. 77.1.

Dated:  June 10, 2013
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

11